UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

CRIMINAL NO. 05-02

UNITED STATES OF AMERICA,                                                                    PLAINTIFF,

v.                                              **OPINION AND ORDER**

JOHNNY RAY TURNER, ROSS HARRIS
and LOREN GLENN TURNER,                                                                      DEFENDANTS.

* * * * * * *

This matter is before the Court on Defendant Johnny Ray Turner's Motion to Dismiss Vote-Hauling Allegations for Unconstitutional Vagueness (Rec. No. 61) and Defendant Loren Glenn Turner's Motion to Dismiss Allegations in Count One and Count Two that Pertain to Vote Hauling for Due Process and First Amendment Violations (Rec. No. 52). After having reviewed the pleadings, the Court has determined that these motions may be resolved without oral argument. For the following reasons, the motions will be denied.

   **I.    Facts.**

The Defendants, Johnny Ray Turner, Loren Glenn Turner ("Glenn Turner") and Ross Harris ("Harris"), are charged with one count of committing mail fraud in violation of 18 U.S.C. § 1341 and one count of conspiracy to commit mail fraud and vote-buying in violation of 18 U.S.C. § 371 in connection with a 2000 Democratic primary election for Kentucky state senator in which Johnny Ray Turner beat incumbent Benny Ray Bailey. (Rec. No. 1, Indictment).

As to the mail fraud count, the Indictment alleges that "[f]rom on or about January 25, 2000, until on or about a day in late 2000," the Defendants devised a scheme and artifice 1) to defraud the Kentucky Registry of Election Finance ("KREF"); 2) to deprive Kentucky citizens of the "honest services" of a candidate for public office; and 3) to obtain money and things of value, that is, the

salary and emoluments of a Kentucky state senator, by material false and fraudulent pretenses and representations. (Rec. No. 1, Complaint, Count 1, ¶ 2).

The Indictment charges that the Defendants falsely asserted in their post-election report to KREF that 1) contributions made to the Johnny Ray Turner campaign were made by the candidate himself or by other individuals when the Defendants actually knew that the contributions came from Ross Harris; and 2) that numerous checks paid by the campaign to numerous individuals were legitimate expenditures for "voter hauling" and "campaign worker," when the Defendants knew that the checks were distributed for the purpose of influencing the recipients to vote for Johnny Ray Turner. (Rec. No. 1, Indictment, Count 1, ¶ 2).

Also as to the mail fraud charge in Count 1, the Indictment alleges that "[f]or the purpose of executing and attempting to execute the scheme to defraud and to obtain things of value by false and fraudulent pretenses, on or about December 12, 2000," one or more of the Defendants caused to be delivered by mail to KREF a package containing an amended post-election report pertaining to the primary election. (Rec. No. 1, Indictment, Count 1, ¶ 3).

As to the second count, the conspiracy to commit mail fraud and vote-buying count, the Indictment alleges that the Defendants conspired to commit mail fraud in violation of 18 U.S.C. § 1341 and to pay persons to vote in violation of 42 U.S.C. § 1973i. (Rec. No. 1 Indictment, Count 2, ¶ 2). The Indictment alleges that 1) "from on or about a day in late January 2000 until on or about a day in late May 2000," Glenn Turner and others gave cash from Ross Harris to various "straw contributors" to reimburse them for checks they were asked to write to the Johnny Ray Turner campaign, (Rec. No. 1, Indictment, Count 2, ¶ 4); 2) In the spring of 2000, Glenn Turner wrote or caused to be written blank checks for amounts of $24, $25, $36, $48, $50 and $60 denoted for "vote

hauling" and "campaign worker" to be distributed to voters to influence them to vote for Johnny Ray Turner (Rec. No. 1, Indictment, Count 2, ¶ 7); 3) the checks were given to middlemen who then distributed them to voters around the various counties, (Rec. No. 1, Indictment, Count 2, ¶ 7); 4) Glenn Turner and others selected the names of persons to list on a KREF report as recipients of checks for "vote hauling" and "campaign worker" when the persons had not received such checks, (Rec. No. 1, Indictment, Count 2, ¶ 8); and 5) that Johnny Ray Turner accepted money from Ross Harris to cover personal contributions to the Johnny Ray Turner campaign. (Rec. No. 1, Indictment, Count 2, ¶ 9).

## II.   Law and Analysis.

42 U.S.C. § 1973i(c) provides that "[w]hoever knowingly or willfully. . . pays or offers to pay. . . for voting" commits a federal crime. While paying someone to vote is clearly illegal under federal law, a Kentucky statute implicitly permits the practice of "vote hauling." KRS § 119.205(5) provides:

> Any candidate or committee, or any person on his behalf, who pays any person, including campaign workers, for transporting voters to the polls on the day of the election, shall make all payments by check. All payments, regardless of amount, shall be reported to the Registry of Election Finance in the manner that the Registry shall provide by administrative regulation. Any person who knowingly violates any requirement of this subsection shall be guilty of a Class B misdemeanor.

In his Motion to Dismiss (Rec. No. 52), Loren Glenn Turner ("Glenn Turner") argues that the federal vote-buying statute is vague because it does not contain any standard for determining "when vote hauling constitutes vote buying." (Rec. No. 52 at 5). Glenn Turner also argues that, "[i]f understood as applying to prohibit[] vote hauling, the vote buying and mail fraud statutes are overbroad" for purposes of the First Amendment because they prohibit constitutionally protected

political speech, i.e., vote hauling. (Rec. No. 52, at 14).

Likewise, in his Motion to Dismiss (Rec. No. 61), Defendant Johnny Ray Turner also argues that "the line between illegal vote buying and legal vote hauling is vague and impossible to discern without clearer guidelines." (Rec. No. 61 at 5). Thus, Johnny Ray Turner asks the Court to Dismiss the vote-buying allegations in Count 1 and Count 2. In the alternative, Johnny Ray Turner asks the Court to instruct the jury that the government must prove that the checks in question were "expressly intended, by both parties, not to pay for vote-hauling services, but to purchase votes." (Rec. No. 61 at 6).

"The due process clauses of the Fifth and Fourteenth Amendments require criminal statutes to provide notice to the accused of the nature and specific elements of the crime charged." *United States v. Salisbury*, 983 F.2d 1369, 1377 (6th Cir. 1993)(quotations and citations omitted). The "void for vagueness" doctrine requires that a statutory prohibition be sufficiently defined so that ordinary people, exercising ordinary common sense, can understand it and avoid the prohibited conduct. *Id*. at 1377-78. Stated another way, the law must be sufficiently specific to warn people to avoid conduct with criminal consequences. *Id*. at 1378. "Due process is violated where a statute provides no definite standard of conduct, thereby giving law enforcement officers, courts and jurors unfettered freedom to act on nothing but their own preferences and beliefs." *Id.*

The federal vote-buying statute provides adequate notice that buying votes is illegal. No party disputes this. The statute prohibits an individual from knowingly or willfully paying for votes or attempting to pay for votes. These words have clear meaning so that a person of reasonable intelligence would know that he or she must not offer money to someone for voting. The statute need not state precise guidelines for determining when an individual will be deemed to have knowingly

4

or willfully paid another individual for voting as opposed to some other legal activity. As with any criminal prosecution where the defendant's intent is an element of the crime, a jury must decide the defendant's intent from all the facts and circumstances. The government will be required to prove beyond a reasonable doubt that the defendant knowingly paid for votes. The defendant will be permitted to present evidence that the payments were actually made for some legal purpose such as vote hauling. It will be up to the jury to decide, from all the facts and circumstances, whether that explanation is reasonable or whether, beyond a reasonable doubt, the payments were actually for voting.

To any person of reasonable intelligence, there is a clear distinction between paying individuals to haul voters to the polls and the activity proscribed under the federal vote-buying statute. Thus, even assuming that vote hauling is protected speech under the First Amendment, a prosecution for vote buying does not violate the First Amendment. An instruction requiring the government to prove that the Defendants and the check recipient intended that the check was to purchase votes is not appropriate. The statute prohibits individuals from knowingly or willfully paying for votes or attempting to pay for votes. Thus, the payor's intent is an element of the crime but the check recipient's intent is not.

Nevertheless, jury instructions in this matter should inform the jury that Kentucky law permits a campaign to pay individuals for transporting voters to the polls on the day of the election. The jury may then determine from all the facts and circumstances whether the government has proved beyond a reasonable doubt that the Defendants actually paid for votes or attempted to pay for votes or whether, instead, the Defendants paid individuals to transport voters to the polls on election day.

Accordingly, for all the above reasons, it is hereby ORDERED that 1) Defendant Johnny Ray Turner's Motion to Dismiss Vote-Hauling Allegations for Unconstitutional Vagueness (Rec. No. 61) is hereby DENIED; and 2) Defendant Loren Glenn Turner's Motion to Dismiss Allegations in Count One and Count Two that Pertain to Vote Hauling for Due Process and First Amendment Violations (Rec. No. 52) is hereby DENIED.

This 13th day of December, 2005.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**