Eastern District of Kentucky
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

DEC 1 6 2005

AT FRANKFORT
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CRIMINAL NO. 05-02

UNITED STATES OF AMERICA,                                          PLAINTIFF,

v.                                          **OPINION AND ORDER**

JOHNNY RAY TURNER, ROSS HARRIS
and LOREN GLENN TURNER,                                          DEFENDANTS.

\* \* \* \* \* \* \*

This matter is before the Court on Defendant Loren Glenn Turner's Motion to Dismiss Mail

Fraud Charges from the Indictment (Rec. No. 50) and the Defendant Johnny Ray Turner's Motion

to Dismiss the Mail Fraud Charges for Failing to allege a crime (Rec. No. 58) and Motion to Dismiss

the Indictment as Charged (Rec. No. 63). After reviewing the pleadings on these motions, the Court

has determined that the motions may be resolved without oral argument. For the following reasons,

the motions will be DENIED.

I.      **Background.**

The Defendants, Johnny Ray Turner, Loren Glenn Turner ("Glenn Turner") and Ross Harris

("Harris"), are charged with one count of committing mail fraud in violation of 18 U.S.C. § 1341

and one count of conspiracy to commit mail fraud and vote-buying in violation of 18 U.S.C. § 371

in connection with a 2000 Democratic primary election for Kentucky state senator in which Johnny

Ray Turner beat incumbent Benny Ray Bailey. (Rec. No. 1, Indictment).

As to the mail fraud count, the Indictment alleges that "[f]rom on or about January 25, 2000,

until on or about a day in late 2000," the Defendants devised a scheme and artifice 1) to defraud the

Kentucky Registry of Election Finance ("KREF"); 2) to deprive Kentucky citizens of the "honest

services" of a candidate for public office; and 3) to obtain money and things of value, that is, the salary and emoluments of a Kentucky state senator, by material false and fraudulent pretenses and representations. (Rec. No. 1, Complaint, Count 1, ¶ 2).

The Indictment charges that the Defendants falsely asserted in their post-election report to KREF that 1) contributions made to the Johnny Ray Turner campaign were made by the candidate himself or by other individuals when the Defendants actually knew that the contributions came from Ross Harris; and 2) that numerous checks paid by the campaign to numerous individuals were legitimate expenditures for "voter hauling" and "campaign worker," when the Defendants knew that the checks were distributed for the purpose of influencing the recipients to vote for Johnny Ray Turner. (Rec. No. 1, Indictment, Count 1, ¶ 2).

Also as to the mail fraud charge in Count I, the Indictment alleges that "[f]or the purpose of executing and attempting to execute the scheme to defraud and to obtain things of value by false and fraudulent pretenses, on or about December 12, 2000," one or more of the Defendants caused to be delivered by mail to KREF a package containing an amended post-election report pertaining to the primary election. (Rec. No. 1, Indictment, Count 1, ¶ 3).

As to the second count, the conspiracy to commit mail fraud and vote-buying count, the Indictment alleges that the Defendants conspired to commit mail fraud in violation of 18 U.S.C. § 1341 and to pay persons to vote in violation of 42 U.S.C. § 1973i. (Rec. No. 1 Indictment, Count 2, ¶ 2). With regard to the conspiracy charge, the Indictment alleges that 1) "from on or about a day in late January 2000 until on or about a day in late May 2000," Glenn Turner and others gave cash from Ross Harris to various "straw contributors" to reimburse them for checks they were asked to write to the Johnny Ray Turner campaign, (Rec. No. 1, Indictment, Count 2, ¶ 4); 2) in the spring of 2000,

2

Glenn Turner wrote or caused to be written blank checks for amounts of $24, $25, $36, $48, $50 and $60 denoted for "vote hauling" and "campaign worker" to be distributed to voters to influence them to vote for Johnny Ray Turner (Rec. No. 1, Indictment, Count 2, ¶ 7); 3) the checks were given to middlemen who then distributed them to voters around the various counties, (Rec. No. 1, Indictment, Count 2, ¶ 7); 4) Glenn Turner and others selected the names of persons to list on a KREF report as recipients of checks for "vote hauling" and "campaign worker" when the persons had not received such checks, (Rec. No. 1, Indictment, Count 2, ¶ 8); and 5) that Johnny Ray Turner accepted money from Ross Harris to cover personal contributions to the Johnny Ray Turner campaign. (Rec. No. 1, Indictment, Count 2, ¶ 9).

The motions currently before the Court (Rec. Nos. 50, 58 and 63) all request that the Court dismiss the mail fraud charge found in Count 1 of the Indictment and the mail fraud prong of the conspiracy charged in Count 2 of the Indictment.

## II.    The Mail Fraud Statute.

The mail fraud statute provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1341.

A conviction for mail fraud requires proof of three elements:

3

(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts);

(2) involving use of the mails; and

(3) for the purpose of executing the scheme or attempting to do so.

*United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1988).

### III.   Standard on Motion to Dismiss.

In *United States v. Landham*,, the Sixth Circuit stated the following:

> In general, an indictment is constitutionally adequate if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. However, it is axiomatic that to be legally sufficient, the indictment must assert facts which in law would constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime. An indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense. . . Further, courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based.

251 F.3d 1072, 1079 (6th Cir. 2001)(citations and quotations omitted).

### IV.   Johnny Ray Turner's Motion to Dismiss the Indictment as Charged (Rec. No. 63).

In his Motion to Dismiss the Indictment as Charged (Rec. No. 63), Johnny Ray Turner asserts that the mail fraud charges in the Indictment must be dismissed because, accepting all of the allegations of the Indictment as true, the government has failed to show 1) that he used the mails in furtherance of the scheme to defraud as required under the mail fraud statute; or 2) that he caused the mailing. The Defendant also appears to argue that the conspiracy charge of the indictment should be dismissed insofar as it alleges a conspiracy to buy votes in violation of 42 U.S.C. § 1973i.

### A.   Whether the Mailing was in Furtherance of the Scheme.

Turner asserts that his campaign filed with KREF by hand delivery a post-primary election

4

finance statement on June 22, 2000 (the "June Report"). On July 7, 2000, KREF sent him a letter regarding the June Report asking him to provide by July 21, 2000 the names and occupations of all individuals who were paid as vote haulers or campaign workers. (Rec. No. 63, Ex. C). Turner asserts that an amended post-primary election finance statement was then hand delivered to KREF on July 20, 2000 (the "July Amendment"). Turner asserts that the July Amendment contained the names and occupations of those listed as vote haulers or campaign workers on the June Report.

On November 30, 2000, KREF then sent Turner a second letter, this time regarding the July Amendment. The letter stated, "[a]fter completing a desk review of the amended 30-day post primary election finance statement, it appears that a mathematical error was made." (Rec. No. 63, Ex. D). The letter states that there was a $1,000 error in the total disbursements listed on the amended report and that four specific payments were not reflected as "disbursements," under Schedule 2 of the of the amended report. The letter directs Turner to "[p]lease provide an amended report that reflects the four disbursements. . . and the correction of the $1,000 error."

Turner asserts that, on December 12, 2000, an amended post-primary campaign finance statement (the "December Amendment") was then filed by mail with KREF. He asserts that the December Amendment only contained the corrected calculations requested by KREF in the November 30th letter.

Count 1 of the Indictment refers to "an amended post-election report pertaining to the primary election" that was mailed on or about December 12, 2000. (Rec. No. 1, Indictment, Count 1, ¶ 3). This is the December Amendment described above and there is no dispute that it was the only KREF report that was actually mailed.

Count 2 of the Indictment refers to a KREF report on which, in the spring or early summer

5

of 2000, Glenn Turner and others falsely reported that certain individuals had received checks for "vote hauling" and "campaign worker" when the individuals had not received such checks. (Rec. No. 1, Indictment, Count 2, ¶ 8). Johnny Ray Turner asserts that this refers to the June Report described above. There is no dispute that it was hand delivered.

Count 2 of the Indictment also refers to an amended KREF report upon which, "[o]n a later date in 2000," in order to comply with a deficiency noted by KREF, one or more of the Defendants "arbitrarily supplied fictitious occupations and addresses" for those denoted as "vote haulers" and "campaign workers" on prior reports. (Rec. No. 1, Indictment, Count 2, ¶ 8). Johnny Ray Turner asserts that this refers to the July Amendment described above. There is no dispute that it was hand delivered.

Turner asserts that, even assuming that the June Report and July Amendment contained false information regarding checks paid to "vote haulers" and "campaign workers" as the government alleges, these reports cannot form the basis for the mail fraud charges because they were not mailed. Turner further argues that the December Amendment cannot form the basis for the mail fraud charges because the scheme alleged in the Indictment would have reached fruition in July at the latest. Turner argues that,

> [B]ecause the scheme involved falsely reporting alleged straw men contributors and influencing people to vote by paying them as 'voter haulers' and 'campaign workers' . . . [,o]nce those acts were done, i.e., once the report containing the 'straw men' contributors had been filed and once the people received 'payment' and voted, the alleged conspirators had succeeded in completing the scheme as well as protecting the success of the alleged fraud.

(Rec. No. 63 at 26).

In support of his argument, Turner cites to four Supreme Court cases, *Kann v. United States*,

6

323 U.S. 88 (1944), *Parr v. United States*, 363 U.S. 370 (1960), *United States v. Maze*, 414 U.S. 395 (1974) and *Schmuck v. United States*, 489 U.S. 705 (1988).

In *Kann*, certain corporate officers and directors were charged with devising a scheme to defraud the company for which they worked and its stockholders. Specifically, the government charged that the defendants established a dummy corporation whose sole purpose was to pay the officers and employees salaries and bonuses which the first company was prohibited from paying them under certain loan agreements with banks. The mailing element of the offense was that, after the defendants cashed or deposited checks from the dummy corporations at local banks, those banks mailed the checks to the bank on which they were drawn for collection. *Kann*, 323 U.S. at 92.

The Supreme Court determined that, when the defendants cashed the checks, they "received the moneys it was intended they should receive under the scheme." *Id*. at 94. Thus, the scheme "had reached fruition." *Id*. "The persons intended to receive the money had received it irrevocably. It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collected from the drawee bank. It cannot be said that the mailings in question were for the purpose of executing the scheme as the statute requires." *Id*.

"[T]he scheme was completely executed as respects the transactions in question when the defendants received the money intended to be obtained by their fraud, and the subsequent banking transactions between the banks concerned were merely incidental and collateral to the scheme and not part of it." *Id*. at 95. The Court concluded that the government had failed to prove that the mailings in question were for the purpose of executing the fraud. *Id*. In its ruling, the Court expressly distinguished cases where the mails are used before and as one step toward the receipt of the fruits of the fraud and cases where the use of the mails is a means of concealment so that further

7

frauds which are part of the scheme may be perpetrated. *Id.* at 94-95.

In *Parr*, the defendants included members of a school district's Board of Trustees and the Board's secretary, attorney and property tax assessor. 363 U.S. at 380. The government alleged that the defendants cashed checks sent to the district by taxpayers as payment for property taxes and took the cash for themselves; and used the district's credit cards to buy gas for themselves. *Id.* at 381-82. As to the cashing of property tax checks, the government alleged that the mail was used when the defendants mailed tax notices to taxpayers and when the taxpayers mailed their tax payments back to the district. *Id.* at 377-78 & n.10. As to the use of the district's credit cards, the government alleged that the mail was used when the oil company sent a bill to the district and the district sent a payment by mail to the oil company. *Id.* at 382.

The Court reiterated that the mail fraud statute reaches only those frauds in which the mailings are a part of the execution of the fraud or are incident to an essential part of the scheme. *Id.* at 389-90. The Court noted that the district was legally required to assess and collect taxes; and there was no proof that the taxes assessed or collected were padded or unlawful. *Id.* at 391. The Court concluded that, given these circumstances, the "legally compelled mailings" were not part of the execution of the fraud, incidental to an essential part of the scheme or made for the purpose of executing the scheme. *Id.* at 391. "[W]e think it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail fraud statute, even though some of those who are so required to do the mailing. . .plan to steal, when or after received, some indefinite part of its moneys." *Id.* The Court specifically noted that the factual situation was "unique." *Id.* at 391.

As to the use of the mail by the oil companies for billing the district and the district's use of

8

the mail to pay the bills, relying on *Kann*, the Court determined that the scheme had reached fruition when the defendants received the goods and services from the oil companies and it was immaterial to the defendants or to the consummation of the scheme how the oil company would collect from the district. *Id.* at 392-93. Thus, it could not be said that these mailings were for the purpose of executing the scheme.

In *Maze*, the defendant stole his roommate's credit card and used it at a motel. The indictment charged that the defendant knew that each merchant would mail the sales slips to the bank that issued the credit card which would then mail them to the roommate for payment. 414 U.S. at 397. The Court determined that the purpose of the mailings was to adjust accounts between the merchants, the issuing bank and the roommate, all of whom had been victims of the fraudulent scheme. *Id.* at 401-02. The Court further found that the defendant's "scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss. Indeed. . . he probably would have preferred to have the invoices misplaced by [the motel] and never mailed at all." *Id.* at 402. The Court determined, therefore, that the mailings were not for the purpose of executing the scheme or artifice to defraud. *Id.* 405.

Finally, in *Schmuck*, a used-car distributor was charged with purchasing used cars, rolling back their odometers and then selling the cars to retailers. 489 U.S. at 707. The retailers then resold the cars to customers. To complete resale to customers, the dealer mailed a title-application form to the Wisconsin Department of Transportation on behalf of his customer. *Id.* The mailing of the title-application form was the mailing element of the mail fraud charges. Relying on *Kann, Parr*, and *Maze*, the defendant argued that these mailings were not in furtherance of the fraudulent schemes.

9

because the mailing at issue had to affirmatively assist the perpetrator in carrying out his fraudulent scheme. He argued that the mailing could not be "routine and innocent" or occur after the fraud has come to fruition. *Id.* at 711.

The Supreme Court determined that a rational jury could have found that the title-registration mailings were part of the execution of the fraudulent scheme that did not reach fruition until the retail dealers sold the cars and effected the title transfers. *Id.* at 712. The Court found that the passage of title was essential to the perpetuation of the defendant's scheme because the retailers would not have continued to purchase the cars from the defendant if they could not successfully pass title to their customers. *Id.*

The Court noted that, to be part of the execution of the fraud, the use of the mails did not have to be an essential element of the scheme. *Id.* at 710. Instead, it is sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot. *Id.* at 710-11. The Court distinguished the tax notices and payments in *Parr*, noting that the title-application mailings were not mandated by state law and that, whereas the mailings in *Parr* would have been made regardless of the fraudulent scheme, the title application forms would not have been mailed but for the defendant's scheme. *Id.* at 713 n.7.

The Court further distinguished *Kann*, *Parr* and *Maze* noting that the intrabank mailings in *Kann* and the credit card invoice mailings in *Parr* and *Maze* involved "little more than post-fraud accounting among the potential victims of the various schemes, and the long-term success of the fraud did not turn on which of the potential victims bore the ultimate loss." *Id.* at 714. The Court further noted that "innocent" mailings – ones that contain no false information – and "routine" mailings can supply the mailing element in a mail fraud charge. *Id.* at 714-15. "The relevant

10

question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time." *Id.* at 715. Thus, the Court determined that the title-application mailings satisfied the mailing element of the mail fraud offense. *Id.*

While *Schmuck* did not overrule *Kann*, *Parr*, or *Maze*, it emphasized that the courts must consider the full scope of the scheme when determining the sufficiency of the mailing element. The Court noted that the scheme there was "not a 'one-shot' operation in which [the defendant] sold a single car to an isolated dealer" but instead was an ongoing fraud that "depended upon his continued harmonious relations" with his customers. *Schmuck*, 489 U.S. at 711-12. The Court concluded that a rational jury could find that the scheme did not reach fruition until the retail dealers resold the cars and effected transfers of title." *Id.* at 712.

> Similarly, the Sixth Circuit has stated that:

> The mailings need not be "false" to be in furtherance of a scheme to defraud. The mailings may be innocent or even legally necessary. As long as a mailing is prior to fruition of the fraudulent scheme, it will support a conviction even if it follows the defendant's fraudulent acts, or occurs after the schemers have obtained the victim's money or goods. In sum, the mailing need only be closely related to the scheme and reasonably foreseeable as a result of the defendant's actions.

*United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1988)(citations and quotations omitted). Likewise, in *United States v. Lane*, the Supreme Court stated that, "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute if they were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." 474 U.S. 438, 451-52 (1986)(quotations and citations omitted).

"Ultimately, whether a mailing furthers a scheme to defraud is a factual question for the jury

to decide." *United States v. Pemberton*, 121 F.3d 1157, 1171 (8th Cir. 1997)(citation omitted). Thus, the issue on this motion is whether any rational juror could conclude that the December Amendment furthered the alleged scheme.

In his motion, Johnny Ray Turner appears to argue that the full scope of the scheme alleged by the government consisted of the false reporting in the June Report and July Amendment to KREF. Thus, when the false reporting was done, the scheme came to fruition. The Indictment, however, actually charges that the false reporting was the *means* by which the Defendants carried out a scheme to defraud KREF; to deprive Kentucky citizens of the honest services of a candidate for public office; and to obtain a state senator's salary. (Rec. No. 1, Indictment, Count 1, ¶ 2). Thus, the alleged scheme did not come to fruition or end when the Defendants submitted the June and July reports. The Defendants did not receive the fruits of the scheme until Turner became a Kentucky state senator.

Even if the mailing of the December Amendment was not required in order for Johnny Ray Turner to be certified the winner of the senate seat or if the mailing occurred after he was certified the winner, it may nonetheless be viewed as furthering the scheme if it made the long-term success of the fraud more likely or made the detection of the fraud less likely than if no mailing had taken place. Neither party makes clear what repercussions would have followed if Johnny Ray Turner had not filed the December Amendment. It is clear that, under Kentucky law, KREF or any qualified voter could institute an action to have the election declared void if Johnny Ray Turner had failed to file a report required under Kentucky's campaign finance laws. KRS § 121.990(4). If the December Amendment was a required report and made any such action less likely, then it could be viewed as furthering the scheme.

12

It is true that in *Parr*, in finding that the tax notices and payments were not mailed in furtherance of the scheme, the Supreme Court partially relied on the fact that the tax notices and payments were mandated by law and would have been sent regardless of the scheme. Nevertheless, as noted, that decision seems to have been limited to its facts. *Parr*, 363 U.S. at 391. In *Oldfield*, the Sixth Circuit stated whether the mailings are legally necessary is immaterial to the determination of whether the mailing was in furtherance of the scheme. 859 F.2d at 392.

Moreover, the December Amendment was not legally mandated like the mailings in *Parr*. Johnny Ray Turner may have been required to file the December Amendment but only because he chose to be a candidate for public office. If the Defendants had never, as the government alleges, devised a scheme to defraud KREF, to deprive Kentucky citizens of the honest services of a candidate for public office; and to obtain a state senator's salary, no Defendant would have mailed anything to KREF. As in *Schmuck*, the December Amendment would not have been mailed if the scheme alleged by the government had not existed.

Likewise, if the December Amendment caused KREF to end any scrutiny of the Johnny Ray Turner campaign, then a rational juror could conclude that the December Amendment furthered the scheme because it made the long-term success of the fraud more likely and detection of the fraud less likely than if no mailings had taken place. The mailing was not simply post-fraud accounting among victims. Instead, it was a mailing by the alleged schemers themselves that could be viewed as incident to an essential part of the scheme, i.e, its long-term success and its freedom from detection. In short, a reasonable juror could find that the December Amendment was mailed in furtherance of the alleged scheme.

**B.     Whether Johnny Ray Turner Caused the Use of Mails.**

13

A person "causes" the mails to be used when he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 8-9 (1954). This "requires that the defendant reasonably anticipate, or as a reasonable person foresee, the use of the mails." *United States v. Davidson*, 760 F.2d 97, 99 (6th Cir. 1985).

Turner argues that his campaign never used the mails to submit prior campaign finance reports. Thus, he could not have anticipated the mails to be used when the December Amendment was filed. However, especially given that the campaign was headquartered in Drift, Kentucky and KREF is located in Frankfort, a reasonable juror could conclude that the mailing of the report was reasonably foreseeable.

**C.     42 U.S.C. § 1973i.**

Johnny Ray Turner argues that no case has extended 42 U.S.C. § 1973i to a "scheme or artifice to defraud" under 18 U.S.C. § 1341. Turner dedicates only one paragraph to this argument in his motion and the Court is unclear as to precisely what he is arguing. In his Reply, he appears to agree with the government's restatement of the argument as a "mail fraud prosecution cannot arise in connection with an allegation of vote buying." (Rec. No. 71, Response at 7). Simply looking at the face of the Indictment, Count 2 alleges a two-prong conspiracy: first, that the Defendants conspired to commit mail fraud; and second, that they conspired to violate 18 U.S.C. § 1973i. (Rec. No. 1, Indictment, Count 2, ¶ 2). With their cursory arguments regarding this issue, the Defendants present the Court with no reason the conspiracy charge or any portion of it should be dismissed. Nor with this argument do the Defendants present the Court with any reason the mail fraud charge in the Indictment should be dismissed.

14

For all the above reasons, Johnny Ray Turner's Motion to Dismiss the Indictment as Charged (Rec. No. 63) will be DENIED.

V.      **Glenn Turner's Motion to Dismiss Mail Fraud Charges from the Indictment (Rec. No. 50).**

In his Motion to Dismiss Mail Fraud Charges from the Indictment (Rec. No. 50), Glenn Turner asserts that the mail fraud charges should be dismissed because the December Amendment was not mailed in furtherance of the alleged fraudulent scheme. Glenn Turner's argument here is the same as that made by Johnny Ray Turner in his Motion to Dismiss the Indictment as Charged (Rec. No. 63) which is addressed in part IV(A) above. Thus, for the reasons stated in part IV(A), the Court does not find that dismissal of the Indictment is warranted on the basis that the December Amendment could not, as a matter of law, have been mailed in furtherance of the alleged scheme.

In his Motion to Dismiss the Mail Fraud Charges from the Indictment, Glenn Turner also argues that the mail fraud charges should be dismissed because the charges exceed the statutory and constitutional limits of the mail fraud statute. Again, with the mail fraud charges, the government alleges that the defendants devised a scheme to defraud KREF; to deprive Kentucky citizens of the "honest services" of a candidate for public office; and to obtain the salary and emoluments of a Kentucky state senator.

The "honest services" theory is found in 18 U.S.C. § 1346 which provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Glenn Turner argues that Congress never intended that the "honest services" provision of section 1346 would cover cases of election fraud. Turner also argues that election fraud cases cannot be prosecuted as schemes to obtain money and things of value, i.e,. the salary and

15

emoluments of public office.

Glenn Turner and co-Defendant Harris made these same arguments to the Court in a prior case before this Court in which they were also charged with mail fraud in connection with an election. (*United States v. Hays, et al.*, United States District Court, Eastern District of Kentucky, Case No. 7:03-CR-3-11, Rec. No. 526 ). Prior to trial, Glenn Turner and Harris moved the Court to dismiss the mail fraud charges for the same reasons Glenn Turner makes in his current motion.

As its response to Glenn Turner's current motion (Rec. No. 80), the government adopts and attaches the response it filed to the Defendants' motion filed in the prior case. (*United States v. Hays, et al.*, United States District Court, Eastern District of Kentucky, Case No. 7:03-CR-3-11, Rec. No.185). Because the current Motion to Dismiss, as with the motion made in the prior case, presents only the legal issue of whether the mail fraud statute applies to election fraud cases and because Glenn Turner and the government make the same legal arguments here as in the prior case, the Court adopts the reasoning contained in the Law and Analysis portion of its Opinion in the prior case (*United States v. Hays, et al.*, United States District Court, Eastern District of Kentucky, Case No. 7:03-CR-3-11, Rec. No. 762) and attaches the Opinion as Exhibit A. For the reasons detailed in the Law and Analysis portion of that Opinion, the Court denies Glenn Turner's Motion to Dismiss the mail fraud charges on the basis that they exceed the constitutional and statutory authority of the mail fraud statute.

For all the above reasons, Glenn Turner's Motion to Dismiss Mail Fraud Charges in the Indictment (Rec. No. 50) will be DENIED.

16

VI.     **Johnny Ray Turner's Motion to Dismiss Mail Fraud Charges for Failing to Allege a Crime (Rec. No. 58).**

In his Motion to Dismiss Mail Fraud Charges for Failing to Allege a Crime under either 18 U.S.C. § 1341 or § 1346 (Rec. No. 58), Johnny Ray Turner makes essentially the same arguments that Glenn Turner makes in his Motion to Dismiss Mail Fraud Charges from the Indictment (Rec. No. 50). Accordingly for the reasons discussed in Section II above, in response to Johnny Ray Turner's argument that election fraud cases cannot be prosecuted under the mail fraud statute, the Court adopts the reasoning contained in the Law and Analysis portion of the Opinion entered in *United States v. Hays, et al.*, United States District Court, Eastern District of Kentucky, Case No. 7:03-CR-3-11, Rec. No. 762, attached as Exhibit A. As Johnny Ray Turner recognizes with his statement in his Reply brief that the Court should stay this action pending resolution of the appeal of the mail fraud convictions in *Hays*, the precise issues raised in his Motion to Dismiss for Failing to Allege a Crime under either 18 U.S.C. § 1341 or § 1346 were presented in the *Hays* case and decided by the Opinion attached as Exhibit A.

Johnny Ray Turner makes one argument that has not been made in prior motions to dismiss the mail fraud charges. He argues that, in Department of Justice manuals and a brief filed in *United States v. Ratcliff*, 381 F.Supp.2d 537 (M.D. La. 2005), the government took the position that the "honest services" provision of section 1346 does not reach schemes to deprive citizens of fair elections. In the *Ratcliff* case, the government did not prosecute the election fraud at issue under the "honest services" theory but only under the salary and emoluments theory. Johnny Ray Turner argues that the government should now be precluded from prosecuting this action under the "honest services" theory because of the government's positions in Department of Justice manuals and in the

17

brief filed in the *Ratcliff case.* (Rec. No. 58 at 5-7).

"Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998)(citations omitted). Neither doctrine precludes the government from prosecuting the election fraud at issue in this case under the "honest services" theory because of statements made in a government manual or in a brief filed in another action.

In his Reply brief, Johnny Ray Turner also states that this Court should stay this action or should continue the trial date of this matter pending resolution of the issues raised in his motion on appeal. Johnny Ray Turner argues that the precise issues raised by his Motion to Dismiss for Failing to Allege a Crime under Either 18 U.SC. § 1341 or § 1346 were presented in the prior election fraud case before this Court which is now on expedited appeal. (*United States v. Hays, et al.*, United States District Court, Eastern District of Kentucky, Case No. 7:03-CR-3-11). Thus, argues Johnny Ray Turner, the Sixth Circuit's rulings will resolve the issues presented by his motion. This argument is made in Johnny Ray Turner's Reply brief on his Motion to Dismiss. Thus, it is unclear whether Johnny Ray Turner is actually moving for a stay or a continuance. Neither Johnny Ray Turner nor Glenn Turner have filed a motion for a stay or continuance pending the Sixth Circuit's ruling. In addition, the record does not contain a speedy trial waiver by either Defendant.

For all the foregoing reasons, Johnny Ray Turner's Motion to Dismiss Mail Fraud Charges for Failure to Allege a Crime under either 18 U.S.C. § 1341 or § 1346 (Rec. No. 58) will be DENIED.

18

**VII.    CONCLUSION.**

For all of the foregoing reasons, the Court hereby ORDERS as follows:

1)      Loren Glenn Turner's Motion to Dismiss Mail Fraud Charges from the Indictment

        (Rec. No. 50) is DENIED;

2)      Johnny Ray Turner's Motion to Dismiss for Failing to Allege a Crime Under Either

        18 U.S.C. § 1346 or § 1341 (Rec. No. 58) is DENIED: and

3)      Johnny Ray Turner's Motion to Dismiss the Indictment as Charged (Rec. No. 63) is

        DENIED.

This __16__ day of December, 2005.

                                    _Karen Caldwell_
                            KAREN K. CALDWELL, JUDGE
                            UNITED STATES DISTRICT COURT
                            EASTERN DISTRICT OF KENTUCKY